# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VERONICA W. OGUNSULA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-0625 (TSC) |
| STAFFING NOW, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

In this employment discrimination action filed *pro se*, Plaintiff alleges that Defendant, a temporary employment agency, discriminated against her because of her race, national origin and age. (Am. Compl., ECF No. 17). Following a lengthy time for discovery, Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 48), and Plaintiff has moved for additional discovery pursuant to Rule 56(d) (ECF No. 56). For the reasons explained below, the Court will GRANT Defendant's motion and DENY Plaintiff's motion.

### I. BACKGROUND

Plaintiff is an African American woman who is at least 40 years old. Her surname is Nigerian. (Am. Compl. ¶ 4). Plaintiff alleges the following facts: In July 2014, she contacted Defendant "seeking temporary staffing and long-term staffing opportunities in the Washington, D.C. metropolitan area." (*Id*. ¶ 5). In early August 2014, Plaintiff spoke by telephone with Staffing Now Senior Manager Chris Van Landingham regarding temporary assignments. (*Id*. ¶¶ 7-8; Dec. 5, 2016 Ogunsala Dep. at 88, ECF No. 48-2). Van Landingham "seemed impressed

1

with [Plaintiff's] skills and asked her to send her resume to him via email." (Am. Comp. ¶ 8). Over the next few weeks, Plaintiff called the agency periodically but received no response from Van Landingham. In mid-August, an agency receptionist referred Plaintiff to "another recruiter," Niya Leek, to whom Plaintiff sent her resume. (*Id*. ¶ 9). Plaintiff "followed up with at least two calls to Ms. Leek," but did not receive a response. (*Id*.).

In September 2014, Plaintiff "called again to follow up on her resume and staffing opportunities and was referred to Ms. Ekundayo," to whom Plaintiff forwarded her resume. (*Id*. ¶ 10). Plaintiff passed "office automation tests" and interviewed with Ekundayo on September 15, 2014. During the interview, Plaintiff provided names of references, but when asked about a supervisor's reference, she responded that "she had not been in a supervisor employee relationship in several years but would provide . . . the name of a supervisor from when she worked at AT&T." (*Id*. ¶ 12). Before Plaintiff left the building, she completed "several employment forms[,] . . . including the I-9 form," and was asked to resubmit her resume as a Microsoft Word document. (*Id*. ¶ 13). Plaintiff's "final discussions with Staffing Now personnel [were] regarding payroll." (*Id*. ¶ 14). Plaintiff's subsequent calls to Ekundayo and Van Landingham between September and November of 2014 went unanswered, and she received no job assignments. (*Id*. ¶¶ 16-17).

Plaintiff alleges that she has undergraduate and graduate degrees in Business Administration and more than twenty years of experience in "administrative, administration, and office skills." (*Id*. ¶ 5). Following her interview with Ekundayo, Plaintiff "was given the impression that she had great skills and was hired and that she would be receiving calls for

2

temporary staffing opportunities"; she "believes that she had an oral agreement regarding being hired as of her final interview." (Am. Compl. ¶¶ 17, 18).

In December 2014, Plaintiff filed a charge with the EEOC, alleging discrimination on the basis of age, race and national origin. (Charge of Discrimination, ECF No. 1 at 6). The EEOC investigated Plaintiff's claims and informed her that it was "unable to conclude that the information obtained establishes violations of the statutes" and that she had a right to file a lawsuit. (Undated Dismissal and Notice of Rights, ECF No. 1 at 5). Plaintiff alleges that she "did not receive a charge letter in the mail" but instead learned about the decision on January 23, 2015, when she visited the EEOC to check the status of the investigation. (Am. Compl. ¶ 20). Plaintiff timely filed this civil action on April 13, 2015.

On November 18, 2015, the court issued a scheduling order, which closed fact discovery on May 31, 2016. On August 1, 2016, the court granted the parties' joint motion and extended the discovery deadline to October 14, 2016, and consequently extended the deadlines for filing and briefing dispositive motions. Defendant timely filed its motion for summary judgment on December 28, 2016; Plaintiff missed her January 18, 2017 deadline to file an opposition. After repeated attempts by Plaintiff to extend deadlines and to reopen discovery, the court finally denied her motion to reopen discovery and extended the deadline to June 16, 2017, for her opposition to Defendant's summary judgment motion. The court left the door open for Plaintiff to file a Rule 56(d) motion if she could make the requisite showing. (*See* May 11, 2017 Order, ECF No. 55).

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249.

## III. ANALYSIS

In response to Defendant's motion, Plaintiff has filed a Rule 56(d) motion. Federal Rule of Civil Procedure 56(d) provides that "[i]f a non-movant shows by affidavit or declaration that,

4

for specified reasons, it cannot present facts essential to justify its opposition," a court is empowered to grant the motion and allow further discovery. FED. R. CIV. P. 56(d). A Rule 56(d) affidavit must: (1) outline the facts the non-movant "intends to discover and describe why those facts are necessary to the litigation," (2) "explain 'why [the non-movant] could not produce the facts in opposition to the motion for summary judgment,' " and (3) "show the information is in fact discoverable." *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (citations omitted) (internal quotation marks omitted). Plaintiff has not satisfied these criteria in her motion or her sealed declaration (ECF No. 59). Rather, she (1) rehashes arguments the court previously considered in denying her motion to reopen discovery, (2) raises matters unrelated to the issues at hand, and (3) argues generally against the summary judgment motion, to which the court now turns.

Relying mostly on Plaintiff's deposition testimony, Defendant contends that Plaintiff cannot establish a *prima facie* case of discrimination. (*See* Def.'s Mem at 2-5, 7-11). The court agrees. Under Title VII of the Civil Rights Act of 1964, an employer cannot "fail or refuse to hire . . . any individual . . . because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2. Similarly, the Age Discrimination in Employment Act ("ADEA") makes it unlawful for a private employer, such as Defendant, "to fail or refuse to hire . . . any individual. . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has interpreted ADEA's language as requiring "a plaintiff [to] prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see Ford v. Mabus*, 629 F.3d 198, 205 (D.C. Cir. 2010) (confirming that "a section 623 plaintiff must, as *Gross* holds, show that the challenged personnel action was taken because of age").

Otherwise, courts "generally apply the same approach" in ADEA and Title VII cases. *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014).

In a failure-to-hire case such as this, the plaintiff

> must carry the initial burden . . . of establishing a prima facie case of racial discrimination . . . by showing (i) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004) ("To establish a prima facie case under the ADEA, for a claim involving a failure to hire, the plaintiff must demonstrate that (1) she is a member of the protected class (*i.e.*, over 40 years of age); (2) she was qualified for the position for which she applied; (3) she was not hired; and (4) she was disadvantaged in favor of a younger person.") (citing *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982)).

Plaintiff has not produced any evidence of a specific job vacancy, let alone one for which she applied, was qualified and was rejected, and those are "the paradigmatic elements of a prima facie case in a Title VII claim involving a failure to hire."[1] *Id*. at 1149. In her Rule 56(d) motion, Plaintiff contends that "the *defendant* has not produced evidence regarding the positions available nor the criteria for these positions. Nor have they suggested any other reason why the

---

[1] At the summary judgment stage, the "operative question" is whether "the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated against the employee on the basis of age" or some other protected classification. *Wilson*, 753 F.3d at 247 (citations and internal quotation marks omitted; ellipsis in original). In answering the question, though, the court must consider "all the evidence, [including] the prima facie case[.]" *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (quoting *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (internal quotation marks omitted)).

plaintiff was not sent out or considered for these assignments." (Mot. at 7 (emphasis added)). Plaintiff's argument prematurely shifts the burden of production to Defendant. For it is only after "plaintiff succeeds in proving the prima facie case" by a preponderance of the evidence that "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff admits that she was never contacted about a job assignment and that her follow-up calls to the agency were not answered. In addition, Plaintiff has not pointed to anything in the record indicating that there was a job vacancy. When asked during her deposition if she had "any specific discussions of any particular or specific positions that were going to be available or were available," Plaintiff replied: "I don't recall . . . . I don't remember specific conversations about each individual item, but I know [Ekundayo] said . . . we would be referring you to positions," (Ogunsula Dep. at 123:9-15), and when pressed further, Plaintiff could not identify "a specific position" for which Ekundayo would have submitted her resume, (*id*. at 125:7-13).

In sum, Plaintiff has adduced no evidence, including her own testimony, from which a reasonable jury could find or infer that she was rejected for a job assignment on any basis, let alone a basis proscribed by Title VII or the ADEA.[2] And when, "after adequate time for

---

[2] Plaintiff assumed that she was hired as a temporary staffer after her interview with Ekundayo, and appears to be vexed by the fact that she was not contacted for an assignment given her education and experience. But such facts, even if true, fail to establish a claim. It is well established that courts "are not super-personnel department[s] that reexamine[ ] an entity's business decision[s]." *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003) (citation and internal quotation marks omitted; alterations in original). Moreover, courts "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive,'" *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Milton v. Weinberger*, 696 F. 2d 94, 100 (D.C. Cir. 1982)). In her deposition testimony, for example,

7

discovery and upon motion [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court may properly grant summary judgment against that party. *Celotex*, 477 U.S. at 322.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be GRANTED, and Plaintiff's Rule 56(d) motion will be DENIED. A corresponding order will issue separately.

Date: September 21, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

Plaintiff admits that during her only conversation with Van Landingham, which was by telephone, he said nothing about her race, age or national origin; that they "only exchanged first names"; (Ogunsula Dep. at 94:10-22), and that the conversation was "upbeat." (*Id*. at 96:13). In addition, Plaintiff "couldn't say" that her exchange with Ekundayo about their African surnames was "discriminatory," (*Id*. at 117:18-20), and the only exchange about her age was reasonably harmless. (*See id*. at 118:1-17) (recalling "a specific conversation" where Ekundayo "commented about me looking younger than I really am," while unsure if Ekundayo even knew Plaintiff's age or what prompted the remark). When asked whether she felt "that the discussion [with Ekundayo] was in any way discriminatory," Plaintiff completely ignored the question and instead replied: "What I can tell you is that we seemed to be on track in terms of me being offered positions, being referred for positions, and all of that." (Ogunsula Dep. at 118-19:18-2).